# RUTLAND RAILROAD COMPANY v. CENTRAL VERMONT RAILROAD COMPANY.

## SAME v. SAME.

### ERROR TO THE COURT OF CHANCERY OF FRANKLIN COUNTY IN THE STATE OF VERMONT.

Nos. 51, 472. Argued April 19, 22, 1895. — Decided November 19, 1895.

When the highest court of a State, in rendering judgment, decides a Federal question, and also decides against the plaintiff in error upon an independ-ent ground, not involving a Federal question, and broad enough to sup-port the judgment, this court will dismiss the writ of error, without considering the Federal question.

A statute of a State imposed a tax upon the gross earnings of railroad com-panies, and provided that the tax upon a leased railroad should be paid by the lessee, and deducted from the rent. A lessee paid the tax upon the railroad of its lessor, and deducted it from the rent, and was sued in equity by the lessor for the rent, without deduction for the tax. The highest court of the State gave judgment for the lessee; and held that the statute, so far as it imposed a tax upon gross earnings derived from interstate commerce, was contrary to the Constitution of the United States; but that the provision for the payment of the tax by the lessee, and its deduction from the rent, was constitutional; and further held, independently of the question of constitutionality, that, as between the lessor and the lessee, it was the duty of the lessor to pay the tax; that the lessee having been compelled by law to make the payment to dis-charge an obligation of the lessor, the law implied a promise to repay; that the lessor having made no suggestion that the statute was unconsti-tutional, and no offer to indemnify the lessee, the lessee could not, in prudence, do otherwise than pay the tax, and was under no duty to incur the expense, delay and perils of litigation to test the constitutionality of the statute; and that the lessor, in a court of equity, could not have re-lief for what, as between the parties, itself should have done, and what, by its own laches it had suffered to be done, professedly in its behalf, by the lessee. *Held,* that this court had no jurisdiction to review the judgment.

THESE were two writs of error to review decrees of the Court of Chancery for the county of Franklin and State of

Vermont, denying, in accordance with mandates of the Supreme Court of the State, the right of the Rutland Railroad Company, which had leased its railroad to the Central Vermont Railroad Company, to recover the amount of taxes assessed upon the gross earnings of that railroad under the laws of the State, and paid by the Central Vermont Railroad Company, and by it deducted from the rent due to the Rutland Railroad Company under the lease. The case appeared by the record to be as follows :

On December 30, 1870, the Rutland Railroad Company leased its road, including a branch known as the Addison Railroad, for twenty years, to the receivers of the Vermont Central and Vermont and Canada Railroad Companies at a fixed rent, payable semi-annually. On June 21, 1873, the Central Vermont Railroad Company became the receiver of the Vermont Central and the Vermont and Canada Railroad Companies, and took possession of the Rutland Railroad under the lease. Disputes arose between the parties, and on February 23, 1876, they made an agreement in writing, modifying the lease, and by which the rent was made payable monthly, and was to be a certain proportion of the gross earnings, which the lessee guaranteed should be not less than $250,000 a year. Neither of the contracts contained any provision for the payment of taxes.

Under the statutes of Vermont of 1874 and 1876, railroads were taxed by the mile in the towns through which they passed ; and the Supreme Court of Vermont, at January term, 1878, in Rutland County, in a case between these parties, not reported, but stated in the opinion of the court below in this case, held that the lessor, and not the lessee, was bound to pay such taxes. See 63 Vermont, 12, 25, 26.

On November 28, 1882, the legislature of Vermont passed a statute, entitled " An act to provide a revenue for the payment of state expenses," which repealed all former statutes taxing the property of railroad companies, and required them to pay to the State a tax of a certain proportion of their gross earnings, and provided that the lessee of a railroad should pay this tax, and might deduct the amount from any payments

due to the lessor.  The material provisions of this statute are copied in the margin.[1]

As required by this statute, blank returns of statements of gross earnings were sent in August, 1883, by the commissioner of state taxes to the Central Vermont Railroad Company; and that company filled out the returns, and paid the taxes on such earnings under protest.

A large part of the gross earnings so returned and taxed accrued from the transportation of persons and property between other States and countries through Vermont, and between Vermont and other States and countries.

---

[1] SECT. 8. A corporation, company, person or persons, failing to pay the amount of any annual or semi-annual tax within the time required by this act, shall forfeit to the State the sum of one hundred dollars for each day's neglect to pay the same after the expiration of the time limited by law.

SECT. 11. Every corporation, person or persons, owning or operating a railroad in this State, whether as owner, lessee, receiver, trustee or otherwise, shall pay a tax to the State on the entire gross earnings of such railroad, if such railroad is situated wholly within the State.  If such railroad is situated partly within and partly without the State, the tax shall be upon such proportion of the entire gross earnings of such railroad as the mileage of trains run in this State bears to the mileage of all the trains run on the entire main line of the road.

SECT. 12. The tax upon such earnings shall be rated according to the earnings per mile of road in this State, and is hereby assessed, at the rate of two per cent on the first two thousand dollars a mile, or total earnings if less than that sum; at the rate of three per cent on the first thousand or part thereof above two thousand dollars a mile; at the rate of four per cent on the first thousand or part thereof above three thousand dollars a mile; and when the earnings exceed four thousand dollars a mile, at the rate of five per cent on all earnings above that sum.

SECT. 13. Such tax shall be payable one half semi-annually in the months of February and August, and shall be based upon the gross earnings during the six months terminating with the last day of December or June next preceding.

SECT. 14. When a railroad is operated in this State by a corporation, person or persons, by virtue of a lease or other contract, the aforesaid tax shall be paid by the lessee of such railroad, or holder of such contract, as the case may be; and the said tax shall be charged against and deducted from any payments due or to become due the lessor of such railroad, or person, persons or corporation granting such contract, as the case may be, on account of such lease or contract; unless in the provisions of such lease or contract it is stipulated otherwise.

The Central Vermont Railroad Company paid the rents, when due according to the agreement, until July 31, 1883; but afterwards delayed such payments, and deducted therefrom the sums paid for taxes on gross earnings.

On September 19, 1883, the treasurer of the Rutland Company, by direction of its officers, wrote a letter to the treasurer of the Central Vermont Railroad Company, claiming that the tax was invalid against the Rutland Company, and demanding payment of the rent in full, without deduction on account of the tax. The president of the Rutland Company afterwards, in conversation with the president of the Central Vermont Company, without intending to limit, or being understood to limit, the grounds of objection of the Rutland Company to the payment of the taxes, stated that it had no gross earnings, and therefore could not be liable for the taxes. No other reason for the denial of its liability for the taxes under the statute of 1882 was ever given to the Central Vermont Company.

By an order of court of January 19, 1884, the Central Vermont Railroad Company was discharged of the receivership, and ordered to transfer and make over all the property in its hands, including the lease of the Rutland Railroad, to the Consolidated Railroad Company of Vermont. On June 30, 1884, the transfer was made accordingly; and on the same day, the latter company leased all the railroads to the Central Vermont Railroad Company, which afterwards continued in possession and operation thereof.

On November 9, 1886, the Rutland Company filed in the Court of Chancery a petition, praying that the Central Vermont Company and the Consolidated Railroad Company of Vermont be ordered to pay the rent due in full, with interest, and without deduction for taxes. The two defendant companies filed an answer denying their liability. The case was referred to a master, upon whose report, embodying the facts above stated, the Court of Chancery, on January 1, 1889, dismissed the petition.

The petitioner appealed to the Supreme Court of Vermont which, at October term, 1890, delivered an opinion, copied in

the record, and reported 63 Vermont, 1, allowing the claim
for interest on rents, reversing the decree, and remanding the
case to the Court of Chancery, with the following mandate:

"In the matter of the petition of the Rutland Railroad
Company, it is considered, adjudged and decreed as follows:

"The act of the legislature of Vermont, entitled 'An act to
provide a revenue for the payment of state expenses,' approved
November 28, 1882, so far as it imposes a tax upon the gross
earnings of railroads derived from interstate transportation of
persons or property, is unconstitutional and void, as being in
conflict with that clause of the Federal Constitution which
confers upon Congress the exclusive power to regulate com-
merce among the States.

"That section 14 of said act, providing that taxes assessed
under said act upon the earnings of railroads operated by
lessees thereof shall be paid by such lessees, and charged
against and deducted from the rents due to the lessor of such
railroads, is constitutional and valid.

"That all taxes paid to the State by the respondent, in ac-
cordance with the provisions of said act of 1882, notwithstand-
ing its invalidity, as above held, were, as against the petitioner,
valid payments, and so, *pro tanto*, payments in extinguishment
of rents due the petitioner.

"That the petitioner is entitled to recover interest upon
the deferred payments of monthly rent, mentioned in the
master's report, from the last day of the month on which it
is held such monthly instalments of rent respectively fell due
under the lease and the modification thereof mentioned in
said report.

"The decree of the Court of Chancery is reversed, and the
cause remanded."

In August, 1891, the Court of Chancery entered a decree,
purporting to pursue the mandate; and allowed an appeal
taken to the Supreme Court of the State by the respondents,
claiming that the decree did not conform to the mandate.
The petitioner, on September 8, 1891, sued out a writ of error
from this court to review that decree.

At October term, 1892, the Supreme Court of Vermont

affirmed that decree, and remanded the cause. 65 Vermont, 360. The Court of Chancery, in August, 1894, entered a final decree accordingly. The petitioner, on October 9, 1894, sued out a writ of error from this court to review this decree.

The defendants in error moved to dismiss both writs of error for want of jurisdiction; the first, because the decree which it sought to review was not a final one; and both, because no Federal question was involved.

*Mr. George F. Edmunds* and *Mr. C. F. Prouty* for plaintiff in error. On the question of jurisdiction, on which the case turned in this court, they said:

If the decision of the Vermont court, that the act, although invalid as a regulation of commerce, would nevertheless protect the defendant, was erroneous, this court has jurisdiction to review that judgment.

The Federal Constitution declares that no State shall pass a law which regulates commerce between the States, or which impairs the obligation of a contract. The defendant has promised to pay the plaintiff a sum of money. It concedes that it has not paid according to its contract. As an excuse for not paying it sets up the statute of the State of Vermont. It makes no other excuse. The only question before the Vermont court is whether that statute protects the defendant. The plaintiff says it does not because it is repugnant to the Constitution of the United States, and upon that question comes to this court. The power to declare that act unconstitutional carries with it, by necessary implication, the power to further declare that, *as an act*, it is not binding upon the plaintiff; and unless that be so, the right of appeal in this case is a senseless formality.

The practical question is, can the plaintiff be divested of its property by virtue of this statute? That question this court has the power to answer, and to make its answer effectual. If the state court can hold that this statute is unconstitutional and nevertheless binding as a statute, and if the

citizen is thereby cut off from all redress in this court, the Federal Constitution becomes a nullity.

If the Vermont court could say that this law was to be treated as valid, because so declared by judicial interpretation, it might also say that it was presumed to be valid until declared invalid by some court of competent jurisdiction, and that, therefore, whatever was done under an unconstitutional act was to be regarded as rightfully done until this court had pronounced it unconstitutional. Would not such a decision present a case for the interposition of this court? If not, what protection has the citizen?

The remedy is an essential part of the obligation. It has been repeatedly held that the legislature cannot take away nor materially change the remedy existing when a contract is entered into without impairing its obligation. When this contract was made the plaintiff could enforce the payment of its stipulated rent. Under the decision of the Vermont court that right is absolutely taken away. That decision must be reviewable here. *Gunn* v. *Barry*, 15 Wall. 610; *White* v. *Hart*, 13 Wall. 646; *Hoffman* v. *Quincy*, 4 Wall. 535; *Edwards* v. *Kearzey*, 96 U. S. 595; *Louisiana* v. *Pilsbury*, 105 U. S. 278.

The authorities all hold that when the validity of a statute under the Federal Constitution is drawn in issue, this court has the fullest power to review every incidental matter which enters into the determination of the question. Does the judgment of the state court infringe the right of the citizen, so far as that right is guaranteed under the Constitution of the United States? The state court cannot escape this power of review by resting its judgment upon some principle of general law, *provided that judgment gives effect to the statute drawn in question. Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Delmas* v. *Insurance Co.*, 14 Wall. 661; *University* v. *People*, 99 U. S. 309; *Given* v. *Wright*, 117 U. S. 648.

*Given* v. *Wright* presented the exact question under discussion. Certain lands in New Jersey had by legislative enactment been set apart to the Indians of that State. The act

provided that they should be free from taxation. This was in 1778. In 1801, at the request of the Indians, an act was passed providing that these lands should be sold, and the proceeds invested for the benefit of the Indians, which was done. Nothing was said in this act about the exemption from taxation, and the New Jersey court held that the lands were exempt in the hands of the new purchasers. In 1804, after the rendition of this judgment, the legislature repealed the exempting clause of the original act, and the state court then held that the lands were then subject to taxation. This decision was reversed upon appeal to the United States Supreme Court, *New Jersey* v. *Wilson*, 7 Cranch, 164, where it was held that the act of 1804 violated the obligation of the contract.

Notwithstanding this decision the lands were regularly assessed and the taxes paid down to 1876, when proceedings were begun in the state court to prevent the collection of these taxes. The state court sustained the assessment, holding that the uninterrupted payment of these taxes for more than sixty years raised a conclusive presumption that the exemption had been surrendered. To review this judgment a writ of error was prosecuted in this court.

The plaintiffs insisted that the state statute impaired the obligation of the contract. The state court said this was true, but that nevertheless the plaintiffs were not entitled to the benefit of the exemption clause by reason of the application of certain general principles of law. This court held that a Federal question was involved and that the Federal court should consider whether the state court had correctly applied those principles which deprived the plaintiffs of the exemption which they claimed.

Mr. Justice Bradley said: " The question, then, will be whether the long acquiescence of the land owners under the imposition of taxes raises a presumption that the exemption which once existed has been surrendered. This question by itself would be a mere question of state municipal law, and would not involve any appeal to the Constitution or laws of the United States. But where it is charged that the obliga-

tion of a contract has been impaired by a state law, as in this case, by the general tax law of New Jersey as administered by the state authorities, and the state courts justify such impairment by the application of some general rule of law to the facts of the case, it is our duty to inquire whether the justification is well grounded. If it is not, the party is entitled to the benefit of the constitutional protection."

The case at bar should be carefully distinguished from those in which the state court puts its decision upon an independent ground. By independent ground is meant some ground apart from the statute, upon which the case may have been decided without any reference to the statute. If the judgment of the state court necessarily *gives effect* to the statute, a Federal question is presented. *Lehigh Water Co.* v. *Easton*, 121 U. S. 388; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574, 579; *Dale Tile Mfg. Co.* v. *Hyatt*, 125 U. S. 46, 51.

*Mr. Edward J. Phelps* for defendant in error. *Mr. B. F. Fifield* was with him on the brief.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

It was hardly denied at the bar, that the first writ of error was prematurely sued out, before a final decree had been entered. But it is unnecessary to dwell upon that, because in other respects the questions arising upon the two writs of error are identical.

The decree below, as appears by the mandate of the Supreme Court of Vermont, and still more clearly by its opinion, made part of the record, and reported in 63 Vermont, 1, did not proceed exclusively on the decision of a Federal question, but also upon grounds of general law.

The conclusion of that court, following the decision of this court in *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, that the statute of Vermont of 1882, so far as it sought to tax the earnings derived from interstate commerce, was unconstitutional, was in favor of the Rutland Railroad

Company, and therefore cannot be questioned on a writ of error sued out by that company.

The court did declare that the provision of the statute, which requires the lessee to pay the tax and deduct the amount from the rent, does not impair the obligation of a contract, because both railroad companies, as well as the rent due from the one to the other, were proper subjects for taxation under the laws of Vermont, and the method to be adopted for the collection of the tax was purely a question of legislative discretion.

But the decision of this part of the case (the only part decided against the plaintiff in error) was not put upon that consideration alone. On the contrary, the court went on to say: "But it by no means follows, because the defendant has paid to the State taxes, under a law afterwards held to be void, by withholding the amount thereof from the rent, that the Rutland Company can now claim the balance of the rent for this reason." And this proposition was rested on several distinct grounds.

The first of these grounds, as summed up by the state court, was as follows: "Down to May 27, 1887, the date on which the decision in *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, was promulgated, the doctrine of the cases decided by the Supreme Court upheld the constitutionality of the taxation in question. *The State Tax on Railway Gross Receipts,* 15 Wall. 284; *The Delaware Railroad Tax,* 18 Wall. 206." "The Supreme Court of the United States is the supreme arbiter when a Federal question is involved. Down to 1887 that court had ruled the Federal question now under consideration in a way that upheld the legislation in question. Its decisions then promulgated were the supreme law of the land, absolutely binding upon both parties to this cause. Hence all payments of taxes, made under our law, which down to that time must be treated as valid for present purposes, were made in strict conformity to law. The subsequent change in the decisions of the United States Supreme Court is only operative prospectively, and all acts done in obedience to the former decisions are valid and cannot be disturbed."

But the conclusion that "the defendants are not liable to pay as rent the amount paid by them as taxes upon the earnings of the Rutland Road," was also put upon other grounds, namely, that the taxes upon the earnings of the Rutland Railroad were taxes, which, as between the Rutland Company and the Central Vermont Company, it was the duty of the Rutland Company to pay ; that, the lease being silent, the duty to pay, under the common law, rested upon the lessor; that this question had been decided in the former suit between the parties; that by the statute of 1882 the thing taxed was the property of the Rutland Company, and the Central Vermont Company was but the collector of the tax; that the Central Vermont Company having been compelled by law to make the payments to discharge an obligation of another, the law implied a promise to repay, and the Central Vermont Company would have an action to recover the amount from the Rutland Company, and a court of equity would avoid circuity of action ; that the Rutland Company, in its treasurer's letter of September 19, 1883, had simply objected that the tax was invalid, and had made no suggestion that the statute was unconstitutional, and no offer to indemnify the Central Vermont Company, and the latter could not, in prudence, do otherwise than pay the taxes, and was under no duty to incur the expense and assume the perils of delay and of litigation, to test the constitutionality of the statute ; and that the Rutland Company, in a court of equity, could not have relief for what, as between the parties, itself should have done, and what, by its own laches, it had suffered to be done, professedly in its behalf, by the Central Vermont Company.

These grounds involved no Federal question, and were broad enough to support the judgment, without regard to the question whether the provision of the statute, under which the Central Vermont Company paid the taxes and deducted them from the rent, was or was not constitutional.

Such being the case, the conclusion is inevitable, that this court has no jurisdiction to review the decision of the state court.

It is well settled, by a long series of decisions of this court,

that where the highest court of a State, in rendering judgment, decides a Federal question, and also decides against the plaintiff in error upon an independent ground, not involving a Federal question, and broad enough to support the judgment, the writ of error will be dismissed, without considering the Federal question. *Murdock* v. *Memphis*, 20 Wall. 590; *Jenkins* v. *Loewenthal*, 110 U. S. 222; *Beaupré* v. *Noyes*, 138 U. S. 397; *Walter A. Wood Co.* v. *Skinner*, 139 U. S. 293; *Hammond* v. *Johnston*, 142 U. S. 73; *Tyler* v. *Cass County*, 142 U. S. 288; *Delaware Co.* v. *Reybold*, 142 U. S. 636; *Eustis* v. *Bolles*, 150 U. S. 361; in the last two of which many other cases to the same effect are cited.

In *Williams* v. *Weaver*, the Court of Appeals of New York held that assessors of taxes were not personally liable in damages to the owner of national bank shares alleged to have been taxed in violation of a statute of the United States. 75 N. Y. 30. A writ of error to review the judgment was dismissed by this court, because, as was said by Mr. Justice Miller in delivering the opinion, "If the defendants, in assessing property for taxation, incur no personal liability for any error they may commit, the fact that the error committed is a misconstruction of an act of Congress can make no difference." 100 U. S. 547.

In *Young* v. *Steamship Co.*, 105 U. S. 41, it was held, in an opinion delivered by Mr. Justice Field, that the question whether fees exacted in violation of a statute of the United States, and paid without objection, could be recovered back, was not a Federal question, the decision of which by the highest court of a State could be reviewed by this court on writ of error.

In *Tyler* v. *Cass County*, above cited, an action was brought against a county to recover back money paid at a sale for taxes of lands alleged to be subject to a lien of the United States, and therefore exempt from taxation. The Supreme Court of North Dakota — while holding that, in view of the decision of this court in *Northern Pacific Railroad* v. *Traill County*, 115 U. S. 600, the lands were not taxable, and nothing passed by the sale — gave judgment for the defendant.

1 No. Dak. 369. In support of a writ of error sued out by the plaintiff from this court, it was argued that the assessor had no jurisdiction to decide whether the lands in question were or were not taxable; and that the state court, in holding that the act of the assessor, in assessing the lands against private parties in possession, though they in fact belonged to the United States, would not be without jurisdiction, decided against the immunity from the jurisdiction of the assessor. But this court dismissed the writ of error, and, speaking by the Chief Justice, said: "The question arising for determination in the state court was whether the money which had been paid by the purchaser of the lands at the tax sale could be recovered back, either at common law, or under the Dakota statute in that behalf. The ground upon which the tax title was held to have failed was that the United States had a lien upon the lands, and that, therefore, they could not, under the laws of the United States, be sold for taxes; but that fact did not impress with a Federal character the inquiry as to the right of recovery." 142 U. S. 290.

That case cannot be distinguished in principle from the case at bar. In this case, as in that, it was argued that the state court, while it declared the statute to be unconstitutional, yet by its decision gave effect to the unconstitutional statute. But in each case the decision of the Federal question was not an essential element in determining whether the plaintiff was entitled to recover against the defendant.

*Writs of error dismissed for want of jurisdiction.*