ZERRES et al. v. VANINA.

(Circuit Court, D. Nevada.  January 28, 1905.)

No. 781.

1. EJECTMENT—POSSESSION—OUSTER.

As a general rule, ejectment, being a possessory action, cannot be maintained for land of which plaintiff is in possession, but it must be affirmatively proved that there has been a disseisin of the plaintiff, and a natural ouster as well as a wrongful possession by defendant.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Ejectment, §§ 65–73.]

2. MINES—CLAIMS—RELOCATION—FORFEITURE.

A relocator of a mining claim is not a discoverer of the mineral contained therein, but an appropriator thereof, and cannot hold the ground except on proof that the original locator had abandoned or forfeited his right by failure to comply with the mining laws.

3. SAME — STATUTES — COMPLIANCE — NOTICE OF LOCATION — DESCRIPTION OF CLAIM.

Where a notice of location of a lode mining claim contained a substantial, though not a literal, compliance with Comp. Laws Nev. 1900, § 208, requiring such notices to specify, among other things, the width of the location on each side of the center of the vein, etc., it was sufficient.

4. SAME—UNITED STATES STATUTES—LOCAL REGULATIONS.

Rev. St. § 2324 [U. S. Comp. St. 1901, p. 1426], providing that all records of mines, as hereafter made, shall contain the name or names of the locators, the date of location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim, and providing that miners of each mining district may make regulations, not in conflict with the laws of the United States or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, and amount of work necessary to hold possession of a mining claim, etc., necessarily implies that provisions with reference to record of notice of location of such claims would be required either by the rules or regulations of miners or by the Legislature of the state.

5. SAME—STATUTES—MANDATORY AND DIRECTORY PROVISIONS.

Comp. Laws Nev. 1900, § 210, providing for the location of lode mining claims, declares that within 90 days of the date of posting the location notice of the claim the locator shall record his claim with the mining district recorder and the county recorder of the mining district or county in which such claim is situated, by a location certificate, etc. Held that, the statute not providing for a forfeiture for failure to record within the time specified, such failure was insufficient to work a forfeiture of the locator's rights.

6. SAME—POSSESSION—RE-ENTRY.

Where an original locator of a lode mining claim performed the necessary assessment work on the claim for the previous year, the fact that he was absent from the ground, and that during such absence some of the boundary stakes had fallen down, and that others had made a relocation of the claim, did not deprive him of the right to re-enter to do the annual assessment work for the succeeding year; his prior location not having been terminated by abandonment or forfeiture.

Action of Ejectment to Recover Possession of Mining Ground.

Mack & Farrington, for plaintiffs.

S. J. Parsons, for defendant.

HAWLEY, District Judge. This is an action of ejectment to recover possession from the defendant of certain mining ground situate in Searchlight mining district, Lincoln county, Nev., claimed by plaintiffs under what is known and designated as the "N. B. Grafter Location," and is claimed by the defendant under what is known as the "Eddie Location."

The complaint was filed July 8, 1904, and, among other things, alleges:

"(2) That plaintiff W. J. Zerres was on the 22d day of March, 1904, lawfully possessed, as owner in fee-simple title, and in the possession and entitled to the possession, of that certain mine and mining claim known as and called the 'N. B. Grafter Mining Claim,' situated in the Searchlight mining district, county of Lincoln and state of Nevada"—describing the same by metes and bounds. "(5) That, the plaintiffs being so possessed, the defendant afterwards, and on and about the —— day of April, 1904, wrongfully and unlawfully and without right entered into the possession of the said N. B. Grafter mining claim and ousted and ejected said plaintiffs therefrom, and ever since has withheld and still does withhold the possession of the said N. B. Grafter mining claim from said plaintiffs."

The defendant, in his answer, denies the averments in plaintiffs' complaint. And "(6) for a further defense this defendant alleges that he is the owner, by purchase and location, in fee simple (subject to the paramount title and rights of the United States), of the Eddie Lode mining claim, situate in Searchlight mining district, Lincoln county, state of Nevada"; describing the same by metes and bounds. The greater portion of the ground covered by the Eddie claim is included within the premises claimed by plaintiffs.

It appears from the testimony on the part of plaintiffs that on January 1, 1904, Burr Jeremiah Hurley, John McDermott, W. J. Zerres, and G. H. Wright located the ground in controversy designated as the N. B. Grafter, and monumented the same by posting stakes in mounds at the corners and side centers of the claim, in compliance with the laws of the United States, and sank a shaft, as required by the statutes of Nevada (Cutt. Comp. Laws, § 209). The notice posted on the ground reads as follows:

"Notice of Relocation 'Eddie' Quartz Claim.

"Notice is Hereby Given, that the undersigned citizens of the United States, over the age of twenty-one years, have in compliance with the requirements of the Revised Statutes of the United States and local laws and customs, this day located and claim 1,500 linear feet along the course of this lead, lode or vein of mineral bearing quartz, and 300 feet in width on each side of the middle of said lead, lode or vein, together with all mineral deposits contained therein, and all timber growing within the limits of said claim, and all water and water privileges thereon or appurtenant thereto, situate in the Searchlight Mining District, County of Lincoln and State of Nevada and more particularly described as follows, to wit: Commencing at discovery shaft or monument and said lines running west to stake 2. Thence north to stake 4. Thence east to stake 3. Thence south to stake 1. Said claim is bounded on the west by the 'Santa Fé' and 'Morgan Courtney' on the north by the 'Barney Riley' and 'Bonanza' on the east by the 'Munyon.' This claim was previously known as the 'Eddie.' This claim shall be known as the N. B. Grafter quartz claim."

This notice was recorded in the district recorder's office on February 15, 1904, and in the office of the county recorder February 24,

1904. An amended certificate was posted upon the ground, and recorded the same day in the district recorder's office of Searchlight mining district, and in the county recorder's office of Lincoln county, Nevada, on February 24, 1904. It reads as follows:

"Know all men by these Presents: That we the undersigned citizens of the United States, and owners of the 'N. B. Grafter Lode Claim' do hereby make and file this our amended certificate of location upon the said lode claim, situate in the Searchlight Mining District, County of Lincoln, State of Nevada, claiming 300 feet or fraction thereof in width, on each side of the middle of said lode at the surface, and all veins, lodes or ledges, within the boundaries of said claim, with their dips, angles and variations; 1,305 linear feet on said lode running S. 41° 54' E. from this discovery post, and 195 linear feet running N. 41° 54' W. on said lode, from this discovery post.

"Said lode mining claim is bounded as follows, to wit: Beginning at cor. No. 1 S. W. Cor. of claim, thence S. 40° 18' E. 748.78 feet to the south side center post, and on same course 1,497.55 feet to cor. No. 2, thence N. 52° 10' E. 275 feet to the east end center post, and on same course 535 feet to cor. No. 3. Thence N. 43° 04' W. 751.22 feet to the North side center post, and on same course, 1,502.43 feet to cor. No. 4, thence S. 52° 10' W. 230 feet to the West end center, and on same course, 462.46 feet to cor. No. 1, place of beginning. Being the same lode to which the original location certificate (made by Burr Jeremiah Hurley, John McDermott, W. J. Zerres and J. H. Wright) relates, as filed in Book 'D' at pages No. 129–130, Searchlight Mining District Records.

"Said lode claim is situate in the North half of Section 34, Twp. 28 South, Range 63 East, M. D. M., about one-half mile N. W. of the Searchlight Post Office, and all corners, and boundaries of said claim are plainly marked with pine posts 4 inches square and five feet long, set in mound of stone and earth. A discovery shaft 4 ft. by 6 ft. 10 ft. deep has been sunk, near the discovery post, in all respects in accordance with the laws of the State of Nevada.

"This amended certificate is filed without waiver of any previous rights, for the purpose of correcting and making more specific the boundaries and description of said lode as originally located upon the ground.

"Date of original location January 1st, 1904.

"Date of amended certificate February 15th, 1904.

"Locators: W. J. Zerres. G. H. Wright."

Thereafter the plaintiff W. J. Zerres, as the owner, prepared another "amended and additional certificate of location," which, among other things, more clearly specified the markings of the posts on the Grafter claim, and their character, and specified "date of original location, January 1st, 1904, date of amended certificate, February 15th, 1904." This amended and additional certificate was recorded in the district records of Searchlight district June 3, 1904, and in the county recorder's office on June 15, 1904.

On the 3d or 4th of June, 1904, C. E. Mack, one of the counsel for the plaintiffs, was in Searchlight district, and had a conversation with Mr. Vanina, defendant herein, relative to the ground in dispute, in which Vanina stated that Zerres had no right to the Grafter claim or ground. "He said, 'It is mine, and I am going to hold it;' and I told him we would sue him if he attempted to, and he said, 'All right,' he should hold it."

At the time of plaintiffs' entry upon the ground designated as the N. B. Grafter, the locators thereof had actual knowledge of the previous location of the Eddie. They knew that the Eddie had been staked by the defendant's grantors; that the notice of location had been recorded

in the district recorder's office; that a shaft had been sunk thereon to the depth required by law, disclosing mineral therein. The testimony shows that the plaintiffs sunk their own shaft but a few feet distant therefrom, and it is proper here to say that their own testimony as to the discovery of mineral therein is very meager, to say the least. But if they had the right to make a valid location, they could appropriate and claim the shaft which defendant sunk, and it is undisputed that mineral was found therein.

At the close of the plaintiffs' testimony, the defendant moved for a judgment of dismissal on the ground that the plaintiffs had failed to make out their case.

Ejectment is a possessory action, and, as a general rule, cannot be maintained for land of which the plaintiff is in possession. It must affirmatively be proved that there has been a disseisin of the plaintiff, and a natural ouster as well as a wrongful possession by the defendant. The contention of defendant is that he could not have constructive possession of the ground in dispute unless he had a valid location of a mining claim thereon, and if this is admitted it would defeat the plaintiffs' right to the premises, and hence the plaintiffs cannot maintain this action without showing an actual ouster and a natural, physical possession of the premises by the defendant, Vanina; and he relies principally upon the following cases: Davidson v. Calkins (C. C.) 92 Fed. 230, and Bevis v. Markland (C. C.) 130 Fed. 227.

Davidson v. Calkins was a suit in equity to quiet title and to restrain defendants from working a mining claim, and the decision was rendered upon an application for temporary injunction. The opinion calls attention to the fact of the distinction which exists between suits in equity and actions at law under the federal practice, and that the state practice is not applicable thereto.

Bevis v. Markland was an action at law to recover possession of a mining claim. The court, among other things, said:

"By bringing this action to acquire legal and actual possession of the whole of the Pioneer claim, the plaintiff has assumed the burden of establishing a right of possession superior to the rights of the defendants evidenced by their prior actual possession. * * * In this action the struggle is for possession only, and the parties cannot have a judicial determination of the question as to which shall ultimately prevail in a contest for the title. * * * The plaintiff does not pretend that there is any evidence to sustain the allegation in his complaint that he was wrongfully ousted of possession by the defendants. They have not by force or intimidation molested him, and they have not interfered with the possession of the plaintiff or his grantor otherwise than by continuing to hold possession in the same manner as before the attempted location of the Pioneer placer claim. Therefore it is essential to his success for the plaintiff to prove that the defendants are mere intruders, having no color of title or right to possession. * * * My attention has not been directed to any precedent or statute or sound reason for permitting a claim jumper to occupy the attention of the courts in litigation of actions to recover possession from a prior locator, when there is not sufficient evidence to create a positive belief with respect to the facts essential to the validity of the prior location."

In Ewing v. Burnet, 11 Pet. 42, 52, 9 L. Ed. 624, the court said:

"An entry by one man on the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it

is done. If made under claim and color of right, it is an ouster; otherwise it is a mere trespass. In legal language, the intention guides the entry and fixes its character."

See, also, Bramlett v. Flick, 23 Mont. 95, 105, 57 Pac. 869, and authorities there cited.

It may be that the plaintiffs did not select the most appropriate form of action or suit in which to raise the question as to which of the parties has the better right of possession to the ground in dispute. The action, however, will not be dismissed on the ground that "no actual ouster" was shown. The case will be disposed of on the merits.

Numerous objections were made pending the trial to the admission of certain documents, certificates of location, amended certificates of location, etc.; the rulings thereon being reserved until the decision of the case. The questions raised are complicated by the fact that there was a failure by both parties strictly to comply with the provisions of the mining law, which, under the decisions in some of the states, is held to be absolutely essential. It will, however, for the purpose of this opinion only, be conceded that the objections made by defendant to plaintiffs' amended certificate of location are not well taken. Some of the objections were purely technical; others become wholly immaterial under the views entertained by the court upon the merits.

The original notice of the Grafter purports upon its face to be a relocation of the Eddie claim, and in the body of this notice it is stated that "this claim was previously known as the 'Eddie.'" A relocator of a mining claim stands in a different attitude from that of an original locator. The original locator of mining ground is a discoverer of the mineral therein contained. A relocator is not a discoverer of the mineral, but an appropriator thereof, and cannot hold the ground except upon making proof that the original locator had abandoned or forfeited his right by failure to comply with the mining laws. All the authorities agree that a relocation impliedly admits that there has been a valid prior location, because there can be no relocation unless there has been a prior valid location or something equivalent thereto. There can be no relocation until there has been an abandonment or forfeiture of the ground by the first locator. Belk v. Meagher, 104 U. S. 279, 289, 26 L. Ed. 735; Lindley on Mines, vol. 1 (2d Ed.) § 404; Snyder on Mines, vol. 1, §§ 573, 580; Barringer & Adams on Mines, 306; Wills v. Blain, 4 N. M. (Johns.) 378, 20 Pac. 798, 802; Providence G. M. Co. v. Burke (Ariz.) 57 Pac. 641, 644; Quigley v. Gillett, 101 Cal. 462, 35 Pac. 1040. In this character of cases the burden of proving a forfeiture rests upon the party claiming it, whether it be by the plaintiff or defendant.

In Hammer v. Garfield Mining Co., 130 U. S. 291, 301, 9 Sup. Ct. 548, 552, 32 L. Ed. 964, the court said:

"As to the alleged forfeiture set up by defendant, it is sufficient to say that the burden of proving it rested upon him; that the only pretense of a forfeiture was that sufficient work, as required by law, each year, was not done on the claim in 1882; and that the evidence adduced by him on that point was very meager and unsatisfactory, and was completely overborne by the evidence of the plaintiff. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735. A forfeiture cannot be established except upon clear and convincing proof

of the failure of the former owner to have work performed or improvements made to the amount required by law."

See McCulloch v. Murphy (C. C.) 125 Fed. 147, 150, and authorities there cited.

It appears from the testimony offered on behalf of the defendant that the notice of location of the Eddie claim was posted on the ground on the 9th day of February, 1902, signed by C. A. De Berry and L. J. Kaiser, the locators, and was recorded on March 20, 1902, in the office of the district recorder of Searchlight mining district, where the claim is situate. The testimony shows that the ground was monumented and staked, and that soon after the location was made a shaft was sunk on the ground, disclosing mineral at a depth of about 14 feet, in compliance with the laws of the state of Nevada (Cutt. Comp. Laws, § 209). On June 12, 1902, the locators deeded their interest in the ground to J. E. Packard, and on May 9, 1904, Packard deeded his interest to Charles Vanina, the defendant herein. During the year 1903 there was labor expended upon the Eddie claim to the extent of over $100. On April 23, 1904, Packard posted an amended certificate of the Eddie mining claim upon the ground, which amended certificate was recorded the same day in the office of the district recorder at Search-light, Nev., and recorded May 2, 1904, in the county recorder's office in Lincoln county, Nev. Vanina thereafter, on the 10th day of August, 1904, posted on the ground an "amended and additional location cer-tificate of the Eddie quartz claim," which was recorded August 10, 1904, in the district recorder's office, and on August 17, 1904, in the office of the county recorder. On the 19th day of September, 1904, Vanina posted, and thereafter recorded in the district and county re-corder's office, another "amended and additional certificate of location of the Eddie quartz claim." The testimony shows that Vanina left Searchlight district in June, 1903, and returned either in February or March, 1904, and in April, 1904, he gave a contract to have work done on the Eddie claim; and he testified that over $200 worth of work was done there in sinking the shaft in 1904, prior to the commencement of this suit.

It will be observed that the Eddie mine was located prior in point of time to the Grafter, and, if the owner of the Eddie had fully com-plied with the law in the location of the mine, and the kind and char-acter of work necessary to hold the claim, it would follow that judg-ment should be rendered in his favor. The law is settled beyond all controversy that a party cannot locate a valid claim to a lode already located and legally possessed by others. Mining claims are not open to relocation until the rights of a former locator have been abandoned, forfeited, or otherwise come to an end. However regular in form a junior location might be, it is of no effect as against the rights con-ferred upon a prior locator, so long as the prior location is subsisting. Rose v. Richmond M. Co., 17 Nev. 26, 57, 27 Pac. 1105; Porter v. Tonopah North Star T. & D. Co., 133 Fed. 756. Did the locators and owners of the Eddie take all the steps made necessary under the law to acquire a valid title? The laws of the state of Nevada provide:

"Sec. 208. Any person, a citizen of the United States, or one who has declared his intention to become such, who discovers a vein or lode may locate a claim upon such vein or lode by defining the boundaries of the claim in the manner hereinafter described, and by posting a notice of such location at the point of discovery, which notice must contain: First. The name of the lode or claim. Second. The name of the locator or locators. Third. The date of the location. Fourth. The number of linear feet claimed in length along the course of the vein, each way from the point of discovery, with the width on each side of the center of the vein, and the general course of the vein or lode as near as may be.

"Sec. 209. Before the expiration of one hundred and twenty days from the posting of the notice of location, the locator shall sink a discovery shaft upon the claim to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper if necessary, to show by such work a lode or deposit of mineral in place. A cut, or crosscut, or tunnel, which cuts the lode at a depth of ten feet or more, or an open cut of at least ten feet in length along the lode from the point where the lode may be in any manner discovered, shall be equivalent to a discovery shaft. * * * or shall substantially build a monument which shall rise at least three feet above the surface, or shall erect a post at least four inches square or four inches in diameter, which must be firmly set in the ground, or in a mound of earth or rock, and must rise at least three feet above the surface. * * * The monument at each corner shall be so marked by letters, figures, or otherwise, as to indicate its purpose.

"Sec. 210. Within ninety days of the date of posting the location notice upon the claim the locator shall record his claim with the mining district recorder and the county recorder of the mining district or county in which such claim is situated by a location certificate which must contain: 1st, the name of the lode or vein; 2d, the name of the locator or locators; 3d, the date of the location and such description of the location of said claim, with reference to some natural object or permanent monument, as will identify the claim; 4th, the number of linear feet claimed in length along the course of the vein each way from the point of discovery, with a width on each side of the center of the vein, and the general course of the lode or vein as near as may be; 5th, the dimensions and location of the discovery shaft, or its equivalent, sunk upon the claim; 6th, the location and description of each corner, with the markings thereon. Any record of the location of a lode mining claim which shall not contain all the requirements made in this section shall be void."

Section 232 provides that:

"Where there is no mining district, or where a district having once existed the residence of the officers within the district and their places of business within the district where the books are kept are not publicly known, district recording shall not be required of the locator or claim owner. But recording shall be required in the office of the county recorder in all cases; as well where there is a district recorder as where there is none."

Objection was made to the introduction of the original notice of location of the Eddie on the ground that it does not give the distance on each side of the discovery point on the claim, nor the general course of the vein. This objection is, in my opinion, more technical than sound. The courts have almost universally held that a literal and a strict compliance with the law in these respects is not demanded, that a liberal construction should be given to the language used by miners in drafting their notices of location, and that a substantial compliance with the law is all that is required. Book v. Justice M. Co. (C. C.) 58 Fed. 106, 115; 1 Lindley on Mines (2d Ed.) § 355, and authorities there cited; 1 Snyder on Mines, § 368; McCulloch v. Murphy (C. C.) 125 Fed. 147, 149; Sanders v. Noble, 22 Mont. 110, 137, 55 Pac. 1037.

The notice constitutes a substantial compliance with the provisions of section 208, Comp. Laws Nev. 1900. The owners of the Eddie also complied with the provisions of section 209, Comp. Laws Nev. 1900. Did they comply with the provisions of section 210, which declares that "within ninety days of the date of posting the location notice upon the claim the locator shall record his claim with the mining district recorder and the county recorder of the mining district or county in which such claim is situated, by a location certificate"? This is the vital question upon which the rights of the defendant must stand or fall.

The laws of the United States are well understood by the miners, and care is usually exercised by them in complying therewith. Under these laws the miners are not required to have their notices of location recorded. The essential provisions are that "the location must be distinctly marked on the ground so that its boundaries can be readily traced," and that "not less than one hundred dollars worth of labor shall be performed or improvements made during each year." But it was provided in section 2324, Rev. St. [U. S. Comp. St. 1901, p. 1426], that "all records of mining claims hereafter made shall contain the name or names of the locators, the date of the location and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." It will thus be seen that Congress evidently anticipated when it gave the authority that "the miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim," subject to the conditions therein stated, that regulations would be made in every mining district, or by the laws of the state, for the recording of the claim. While it is true that there is nothing in the United States laws requiring a record to be made of the location, still the provisions of section 2324 clearly imply that such provision will be required either by the local laws, rules, or regulations of the miners, or by the Legislature of the state.

The plaintiffs rely upon the principles announced in Mallett v. Uncle Sam M. Co., 1 Nev. 188, 90 Am. Dec. 484, Oreamuno v. Uncle Sam M. Co., 1 Nev. 215, and Sisson v. Sommers, 24 Nev. 379, 387, 55 Pac. 829, 830, 77 Am. St. Rep. 815, wherein it is said:

"To enable a party to maintain a right to a mining claim after the right is acquired, it is necessary that the party continue substantially to comply not only with the laws of Congress, but with the valid laws of the state, and valid rules established by the miners, in force in the district where the claim is situated upon which such right depends. Failure to comply with such laws and rules works a forfeiture, whether the laws and rules provide for forfeiture for noncompliance or not, and the mining claim becomes subject to location by any qualified locator."

The court did not, however, have occasion to construe the provision of section 210 which is here presented. All the authorities, both national and state, agree that unless the locator substantially complies with the law in regard to the labor to be expended on the claim, in the manner and form required by the statutes, his rights may become forfeited. This provision is mandatory and must be complied with. And

this, when applied to the facts of the case, is the extent of the decision in Sisson v. Sommers.

Is the state statute which requires the certificate of location to be recorded within 90 days after posting notice of location mandatory? Does the failure so to record make the location void? The statute does not in terms so provide. The language of the statute is that "any record of the location of a lode mining claim which shall not contain all the requirements made in this section shall be void." These requirements are specifically numbered from 1 to 6, inclusive, and the failure of the record to show that these requirements have been substantially complied with makes the record void. While the statutes of this state prescribe the time within which the record must be made, and are mandatory on the question of a record in the first instance, they are directory merely in so far as they relate to the time for making the record, provided no adverse rights have intervened in the meantime. 1 Lindley on Mines, § 390; 1 Snyder on Mines, §§ 418, 423; Preston v. Hunter, 67 Fed. 996, 15 C. C. A. 148; Faxon v. Barnard (C. C.) 4 Fed. 702; Van Zandt v. Argentine M. Co. (C. C.) 8 Fed. 725; Strepey v. Stark, 7 Colo. 614, 5 Pac. 111; Craig v. Thompson, 10 Colo. 517, 16 Pac. 24. And even where adverse rights have intervened, unless they are founded upon a valid location and compliance with the law, they will be of no avail. Snyder on Mines, supra; Omar v. Soper, 11 Colo. 380, 18 Pac. 443, 7 Am. St. Rep. 246; McGinnis v. Egbert, 8 Colo. 46, 5 Pac. 652. This court is of opinion that, in the absence of any provision in the statute prescribing a forfeiture for failure to record a claim within a specified time, a locator who is in the actual possession and working his claim will be protected in the same, although he failed to record his location within the time required by the statute of the state or the rules of the mining district. The mere fact that defendant was absent from the Eddie ground, and that some of the Eddie stakes had fallen down at the time the plaintiffs made their relocation of the Grafter, did not vitiate the Eddie location. The defendant, having performed the necessary work to hold the ground for the year 1903, had the right to re-enter upon the ground at the time he did for the purpose of doing his annual assessment work for the year 1904. His entry was lawful, unless by the failure to comply with other provisions of the law he had forfeited his rights. The law is well settled that actual possession of a mining claim is not essential to the validity of the title obtained by valid location; that, until such location is terminated by abandonment or forfeiture, no right or claim to the property can be acquired by an adverse entry thereon with a view to the relocation thereof. Belk v. Meagher, 104 U. S. 279, 283, 284, 26 L. Ed. 735; McCulloch v. Murphy, supra. As to the condition of the stakes: Book v. Justice M. Co. (C. C.) 58 Fed. 106, 114.

The statute under consideration, while designed to give constructive notice to prospectors of ground claimed by the locators, was also intended for the benefit of the miners making location upon the public domain. It gives to the locator 90 days to record his certificate of location after posting his notice of location, tells him what it shall contain, and declares that, if it does not contain what is required, the "record"

shall be void. It does not say that, if the record is not made, his rights to the claim shall be forfeited. It is important for him to make the record, to record his certificate of location within the time required, and see to it that it contains all of the six requirements stated in section 210. Why? Because, as therein stated, "any such record or a copy thereof   *   *   *   shall be prima facie evidence of the facts therein stated." But if he fails to record his claim, it was not intended that he should be deprived of all his rights to the mining ground, provided he had substantially complied with all the other requirements of the mining laws. The record of the location is the inception of what may be called the paper title. It does not of itself constitute title, nor the possessory right to the mining ground to which it relates. As was said by the court in Strepey v. Stark, 7 Colo. 614, 618, 5 Pac. 111, 113:

"It is purely a creature of the statute, and, under the evident legislative intent, its purpose and functions are twofold: When duly recorded, it becomes notice to the world of the facts therein set forth, namely, a description of the premises claimed, and by whom and when located, in order to secure the discoverer or claimant against others seeking to locate the same ground, and is thus constructive notice of the claimant's possession. In addition to this purpose which it is to serve, it would seem that by statute such certificate is made one of the steps requisite to constitute a perfected mining location."

In 1 Lindley on Mines, § 392, the author says:

"Where the right of possession is founded upon an alleged compliance with the law relating to a valid location, all the necessary steps, aside from the making and recording of the location certificate, must, when contested, be established by proof outside of such certificate."

Suppose the certificate of location had been filed within the time specified, and that it literally complied with all the requirements provided in the statute, but in reality that the statements therein made were "false." Such a record would not make the possessory title good. The subsequent locator, notwithstanding the fact that a perfect record had been made, would not be estopped from showing that it was false. If no record at all is made until after a subsequent locator claims a right to the ground, should not the original locator be allowed to prove, if he can, that he had in all other respects fully complied with all the requirements of the law? If he fails to properly record his certificate of location, he may be deprived of the benefits given by law, which would enable him more easily to prove and make out a prima facie case. But it was not the intention of the lawmakers to deprive him of otherwise proving that he had performed the essential acts necessary to give him the right of possession to the ground.

The statute is in these respects analogous to the statute of Nevada which requires a record to be made of the labor annually performed on the mine within a specified time after the labor is performed. Laws Nev. 1887, p. 136, c. 143 (Cutt. Comp. Laws, § 217). In Book v. Justice M. Co. (C. C.) 58 Fed. 106, 118, it was claimed that certain locations of mining claims were invalid because the assessment work was not recorded as required by this statute. This court, after quoting the statute, said:

"The object of this act was evidently to fix some definite way in which the proof as to the performance of the work or expenses incurred in the making of improvements might be in many cases more accessible. In all mining communities there is liable to be some difficulty in finding the men who actually performed the labor or made the improvements, and procuring their testimony, in order to establish the facts necessary to show a compliance with the mining law in this respect. The act was passed, as expressed in the title, 'for the better preservation of titles to mining claims.' Locators of mining claims would doubtless often save much time and trouble, as well as hardship, inconvenience, and expense, by complying with the provisions of this act; but the act does not prevent, and was not intended to prohibit, the owner of a mining claim from making the necessary proof in any other manner, nor does it prohibit the contesting party from contradicting the facts stated in the affidavit. It simply makes the record prima facie evidence of the facts therein stated."

There was no provision in that statute, and there is no provision in the section of the statute under consideration, "that a failure to comply with its terms will work a forfeiture." And in my opinion, the statute requiring the certificate of location to be recorded, when broadly and liberally interpreted, in order to secure the purposes for which it was enacted, is not susceptible of any such construction.

In Last Chance M. Co. v. Bunker Hill S. M. Co. (C. C. A.) 131 Fed. 579, 586, the court said "that the failure of the locator of the Bunker Hill claim to record his notice of location within the time prescribed by the Idaho statute did not work a forfeiture of the claim, there being no such penalty affixed by the statute."

My conclusion, arrived at after a painstaking and somewhat extended examination of all the facts and of the authorities having relation thereto, is that the plaintiffs have not established by a preponderance of evidence, which the law imposes upon them, their superior and better right to the possession of the ground in controversy, as against the defendant, and that the defendant is entitled to a judgment for his costs.