[L. A. No. 946.   Department Two. — February 27, 1901.]

## LEWIS WRIGHT, Respondent, v. F. G. KILLIAN et al., Appellants.

MINING CLAIM — ANNUAL LABOR — SUPPORT OF FINDING — CONFLICTING EVIDENCE — INTENTION TO COMPLY WITH STATUTE. — A finding that the amount of annual labor required to hold mining claims under section 2324 of the Revised Statutes of the United States was done by the plaintiff, is supported by evidence tending to show, in view of all the circumstances of the case, that work to the amount of one hundred dollars was done on each claim, and that that amount was paid in good faith for the work done, and that it was intended to comply fully with the statute, and not to evade it, notwithstanding conflicting evidence as to the value of the work.

ID. — CIRCUMSTANCES TO BE CONSIDERED. — It is proper to consider the circumstances under which the work was done, the remoteness of the mines from any place where labor relied on was available, the necessity of a team, the extra cost for supplies, the inconvenience in procuring wood and water, the difficulty of the work, requiring blasting to be done, and other circumstances, tending to show that the contractor to whom the money was paid for the work realized no profit therefrom, beyond the value of his own work and supervision; and where there was evidence that the required amount of work was done, this court cannot take from the trial court the right to determine from all the evidence the value of the work performed.

ID. — BY-LAW OF MINERS — REBUTTAL OF BAD FAITH. — Although a by-law adopted by the miners of the district, fixing the number of cubic feet to be excavated to show the requisite amount of annual work, cannot dispense with the requirements of the act of Congress, yet it tends to show how the miners of the district regarded the general character of the mining ground in the district, and what amount of work, in their judgment, would be worth one hundred dollars; and where the work done by plaintiff exceeded the number of cubic feet fixed by the by-law, it tends to rebut any inference of bad faith.

ID.—RELOCATION NOT JUSTIFIED—FINDING AS TO RELOCATION IMMATE-
RIAL.—Where a relocation was not justified for failure of the claim-
ants in possession to do the annual work required by law, the char-
acter and apparent validity of such relocation is immaterial, and it
is immaterial whether findings made thereupon are or are not sup-
ported by the evidence.

APPEAL from a judgment of the Superior Court of San
Bernardino County. Frank F. Oster, Judge.

The facts are stated in the opinion.

Rolfe & Rolfe, and F. B. Daly, for Appellants.

Leonard & Morris, and J. M. Walling, for Respondent.

CHIPMAN, C.—Action to quiet title to certain four min-
ing claims, and for an injunction. Plaintiff had judgment.
The appeal is from an order denying defendants' motion for a
new trial.

The verified complaint alleged ownership and right of pos-
session of the mining locations in question for more than five
years prior thereto; that defendants entered upon the property
on January 1, 1899, and thereafter extracted and are now ex-
tracting ore therefrom, and that they claim some interest in
and to the said mining locations. Defendants answered, deny-
ing the ownership of plaintiff "at the commencement of the
action, or at any time on or after the first day of January,
1899"; alleged that plaintiff failed to do work, on each of said
locations, of the value of one hundred dollars during the year
1898, and that he therefore forfeited any interest he might
have had therein; that for more than three years prior to
January 1, 1899, defendants "had known of the mining claims
mentioned in said complaint and of the gold-bearing veins or
lodes thereon"; that, knowing plaintiff had forfeited his rights
by failure to do the requisite assessment-work, they "entered
upon the premises . . . on said first day of January, 1899,
. . . for the purposes of locating and in good faith working
and developing the ores," etc., and erected substantial monu-
ments and posted notices, and within twenty days thereafter
recorded the same in the county recorder's office.

The court found that "each and all of the averments of the
complaint are true"; that plaintiff, during the year 1898,
"performed and caused to be performed, upon each of said
mining claims, . . . not less than one hundred dollars' worth

of work and labor in the development and improvement of each of said claims." The court found in detail the acts and things done by defendants constituting their location of the property, setting forth copies of their notices, but the court found that said notices made no reference to any natural objects or permanent monuments in existence, sufficient to identify any of said locations, and that the monument erected by defendants on each of said claims was not erected at any point of discovery thereon, nor upon any gold-bearing ledge, vein, or lode of rock in place bearing any mineral deposits or precious metals.

As conclusions of law the court found that plaintiff is the owner, and that defendants had no right in or to any of the claims, and that defendants should be perpetually enjoined from working the mines. Judgment was accordingly entered.

1. It is contended that the evidence does not support the finding that plaintiff performed or caused to be performed one hundred dollars' worth of work on each claim during the year 1898. This is the principal question in the case.

The answer, by its form of denial, admits that on December 31, 1898, and for five years prior thereto, plaintiff was the owner of the mining claims in question, but it is alleged in the answer that plaintiff forfeited his interest by failure to do the requisite assessment-work for 1898. An admission of ownership would imply that plaintiff had done whatever was necessary to constitute ownership, including assessment-work. The parties, however, seem to have treated this admission (which was also made in open court when the trial began) as simply establishing a *prima facie* case for plaintiff, and as casting the burden on defendants of proving the alleged forfeiture, and they at once assumed the burden and put in their evidence on that issue.

The provisions of section 2324 of the Revised Statutes of the United States, which relate to questions involved in the pleadings, including that relating to the labor required, are as follows: "The miners of each mining district may make regulations, not in conflict with the laws of the United States, or with laws of the state or territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground, so that its boundaries can be readily

traced. All records of mining claims hereafter made shall contain the names of the locators, the date of the location, and such description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim. On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. . . . And upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators; . . . their representatives, have not resumed work upon the claim after failure, and before such location."

It appears without conflict that one Greenleaf was employed by plaintiff to do the requisite assessment-work on each of the four claims, and that he was paid four hundred dollars by plaintiff therefor. The claims are about 50 miles from any railroad station and 120 miles from San Bernardino, whence Greenleaf went with a team and five men to do the proposed work. He testified that he thought it necessary to take men from San Bernardino, because he was not sure of finding them near the mine. All these men, together with Greenleaf, worked more or less days, and excavated a shaft on each claim, of dimensions, as Greenleaf testified, of about $4\frac{1}{2}$ feet by 6 feet, and about 12 feet deep. The character of the ground through which they sunk the several shafts varied somewhat in the different claims, but it required blasting, and was what would be called hard ground to work; and Greenleaf testified that the work performed by him on each claim was reasonably worth one hundred dollars, and more. In this estimate he was corroborated by several witnesses, who were qualified to judge of the value of the work, and who examined the shafts and the ground, and also by two of the men who helped do the work.

The evidence was, that Greenleaf fitted out the party with tools, forge, powder, fuse, and other supplies, and a team; that he supervised the work, as well as did some part of it with his own hands; that he was familiar with the value of that class of work, and had done much similar work in that mining district. Defendants offered in evidence the recorded affidavit of one Phelps, who had helped do the work, and made the proof of labor on behalf of plaintiff, and this affidavit stated that at

least one hundred dollars' worth of labor and improvements was performed and made on each of the claims. It was in evidence, without objection, that the miners in that mining district had adopted and caused to be recorded in the office of the county recorder the rules and by-laws of the district. Among those who organized the district were two of the present defendants, and among the rules adopted was article 6, "that a shaft four feet in width, six feet in length, and ten feet deep, or its equivalent in cubic feet, shall be excavated in each claim, and this shall constitute the regular assessment-work of the district."

It appears, however, that the wages in the district generally were three dollars per day for a man, where he boarded himself, or two dollars when board was furnished, the employer to furnish tools, powder, etc., in both cases; that the shaft dug on each claim could be done by one man in fifteen to eighteen days, and the wages actually paid by Greenleaf to his men did not exceed these figures. Estimates by witnesses for the defense showed that the supplies, tools, team used, and other items of expense, added to the cost for wages, could not have reasonably amounted to one hundred dollars for each location. It is claimed that there is in no true sense any conflict in the evidence, because it clearly appears that the witnesses who estimated the value at one hundred dollars could not give in detail the items aggregating so great a sum for the work actually done. There is no question that plaintiff paid Greenleaf, in good faith, the full amount of four hundred dollars. It is fair to infer from the evidence that Greenleaf did work which he believed sufficiently complied with the law and was of the value of one hundred dollars. There is nothing in the evidence justifying the inference that there was any intention to evade the law or come short of its requirements by plaintiff, or by the men whom he employed to do the work. Considering all the circumstances under which he undertook the work, — the remoteness of the mines from any place where labor could be relied on as available, the extra cost of supplies, the inconvenience in procuring wood and water, requiring a team to be kept there, the lack of facilities for cooking, and other like circumstances, — it may be doubted whether there was any profit to Greenleaf, notwithstanding all that appears as to the cost of the various items of expense. But, even if he made some profit, there is evidence substantial, direct, and credible that

the labor performed on each claim was worth one hundred dollars, and we cannot take from the trial court, in such a case as appeared here, the right to determine from all the evidence the ultimate fact of the value of the work performed; nor can we say there was no substantial conflict in the evidence. The facts brought out by defendants tended strongly to weaken the evidence adduced by plaintiff, but it did not destroy it utterly, and leave the facts without conflict. The good faith of plaintiff was further shown in this, that he had sold the mines conditionally, and the deeds were in escrow, and he had employed Greenleaf to go with the representatives of the proposed purchasers and examine the property after the assessment-work was done. They went, and some of them were there on December 31st, taking samples of ore, and returned the next day, Sunday, January 1st, to continue their examination and development-work, and then found that, during the intervening night, at the hour of twelve o'clock and ten minutes, defendants had "jumped" the claims, and had tied the tools together that they found at one of the claims, and attached a notice thereto, "saying, 'Remove tools,' signed by Jack Killian," one of defendants. They thereupon left the mines, being unwilling to purchase a lawsuit, and, shortly after, plaintiff brought this action.

It is no doubt true, as appellants contend, that the provision of the law as to assessment-work is often evaded, and that, as this court has said, "the conditions imposed by the act of Congress are wise and salutary, and are by no means onerous" (*Russell* v. *Brosseau,* 65 Cal. 605), and must be complied with (Id.); but there is disclosed here no effort or intention to avoid the provisions of the law. The trial judge had the witnesses before him, and all the peculiar circumstances surrounding the parties must have received consideration. The by-law above referred to could not dispense with the requirements of the statute, but it tended to show how miners regarded the general character of the mining-ground in that district, and what amount of work, in their judgment, would be worth one hundred dollars; and it also tended, in some degree, to rebut any inference of bad faith in stopping the work in a shaft after it had been sunk twelve feet of the required dimensions, even though it cost less than one hundred dollars. We think there was sufficient evidence to support the finding.

2. The fourth finding, as to the want of knowledge of defendants concerning the presence of gold-bearing veins, is not material. Conceding that the proceedings taken by them to relocate the claims were all regular, they could confer no right, inasmuch as plaintiff had not forfeited his right.

The same may be said as to finding 7, that defendants' notices did not refer to any natural objects or permanent monuments, sufficient to identify their locations, and that the locations were not distinctly marked on the ground so that their boundaries could be readily traced. Findings upon these matters, and as to whether defendants complied with the act of 1897 (since repealed, but then in force), become immaterial, and if not supported by evidence, were without injury.

3. Numerous exceptions to rulings of the court in admitting and rejecting testimony were taken by defendants, but few of which, however, are referred to in their brief.

We have examined the record at the points indicated, and while we think in one or two instances the rulings should have been the other way, they were not prejudicial to defendants. The essential facts came out quite fully on both sides, and we can discover no instance where evidence was admitted or excluded over defendants' objection to their injury.

It is advised that the order be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.    Henshaw, J., Temple, J., McFarland, J.