(November 30, 1909.)

## CHARLES SWANSON, Appellant, v. NANCY M. KETTLER et al., Respondents.

[105 Pac. 1059.]

MINING CLAIM—LOCATION—WHEN RELOCATION IS VALID—ADVERSE SUIT.

1. Where sufficient annual assessment work is done on a particular claim to represent such claim, and contention is made by a junior locator that the work was done for the purpose of representing several claims, and for that reason was insufficient to represent the particular claim, in determining the sufficiency of the work the court will apply the labor shown to have been done to the particular claim upon which the work was done.

2. Mineral ground covered by a valid location becomes segregated from the public domain and is the property of the locator, and so long as the locator complies with the laws of the United States and the state and local regulations, such locator has the exclusive right and enjoyment to all the surface included within the lines of the location against all the world; and during such time such ground so segregated is not open to location by another, and any relocation of such ground during such time is void.

3. In an adverse suit, under the provisions of sec. 2326, U. S. Rev. Stat., a person who has initiated a right to a mining claim, recorded his location notice and performed the other acts made necessary by law, and who makes application for a patent, will be entitled to a patent unless adverse rights are set up in the mode provided by the section.

4. A senior locator, possessed of a paramount right in mineral land for which a patent is sought, may abandon such right and thereby render the ground covered by such location subject to relocation before the expiration of the statute of limitations prescribed, within which the annual labor must be performed.

5. Ground embraced in a mining location may become a part of the public domain so as to be subject to another location before the expiration of the statutory period for performing annual labor, if at the time when the junior location was made there had been an actual abandonment of the claim by the first locator; but at the time such junior location is made the ground must be open to location under the mineral laws of the United States.

6. Upon application for patent a junior locator, as against the senior locator, or a third location as against the junior location,

may show that the ground covered by the senior location had become a part of the public domain so as to be subject to relocation, even before the expiration of the statutory period for performing the annual labor, by showing that there has been an actual abandonment of the claim by the first locator.

7. In an application for a patent by a junior locator, upon failure of the senior locator to adverse, it will be presumed that there was no senior location, and that at the time the junior location was made the ground was open to entry under the mineral laws of the United States; but where it also appears that there is a third location made subsequent to the junior location, such third locator may adverse the application for patent by the junior locator, and show that the junior location is void because at the time it was made the ground was not open to location under the mineral laws of the United States.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District, for Blaine County. Hon. Edward A. Walters, Judge.

Application for patent to mineral ground by appellant. Respondent adverses. Judgment for respondent. *Affirmed.*

John M. Zane, and Stockslager & Bowen, for Appellant.

A relocation under the law is merely a new location of ground formerly held but abandoned. When one claim is abandoned and another located, all rights are determined with reference to the new location. (*Cheesman v. Shreeve,* 40 Fed. 787; *Van Valkenburg v. Huff,* 1 Nev. 142; *Lavagnino v. Uhlig,* 198 U. S. 443, 25 Sup. Ct. 716, 49 L. ed. 1119.)

No rights being claimed by the Emma location, they are deemed waived, and any ground included thereunder would necessarily inure to the Independence No. 2. (*Lavagnino v. Uhlig,* 198 U. S. 443, 25 Sup. Ct. 716, 49 L. ed. 1119.)

To make a valid claim it would be necessary to have a discovery upon vacant ground; if this were done, then the location would be a valid claim, and if it overlapped any other prior claim, and such prior claim was afterward abandoned, then such overlapping area inured to the otherwise valid location. (*Lockhart v. Farrell,* 31 Utah, 155, 86 Pac. 1077.) In *Farrell v. Lockhart,* 210 U. S. 142, 28 Sup. Ct. 681, 52

L. ed. 994, the court expressly affirmed the case of *Lavagnino v. Uhlig.* Nowhere does the court even intimate overruling the point decided by them, in *Lavagnino v. Uhlig.* The point decided in *Lavagnino v. Uhlig* was exactly the point in issue here, and the court held that the owners of the Yes You Do, an 1897 location, could not defeat the Uhlig in 1889 by the alleged fact that when the Uhlig was located there then existed the Levi P. which was not subject to forfeiture until 1897.

Abandonment is a question of intention to be determined upon all the facts. It means the voluntary giving up of an estate. It operates *instanter* and may occur at any time, even after full compliance with the laws regarding annual labor. (Lindley on Mines, 2d ed., secs. 643, 644.)

When Anderson, Warren and Swanson located and established the discovery of the Independence No. 2 on January 3, 1889, re-establishing the east end line of Independence No. 1, it was unquestionably their intention to voluntarily abandon give up and surrender the 175 feet fraction containing the discovery of the Independence No. 2, as a part of the original Independence. That being so, it became a part of the public domain, and was subject to location as such. (*Farrell v. Lockhart, supra; Kinney v. Fleming,* 6 Ariz. 263, 56 Pac. 723; *Murley v. Ennis,* 2 Colo. 300; *Weill v. Lucerne M. Co.,* 11 Nev. 200; *St. John v. Kidd,* 26 Cal. 263.)

Sullivan & Sullivan, McFadden & Brodhead, and Frank Reeves, for Respondents.

Even if it were intended that the work performed on Emma No. 2 in 1888 should be for the benefit of other claims also, and the amount was insufficient to protect all, it would be applied by the court to the claim on which it was actually performed. (*Fredericks v. Klauser,* 52 Or. 110, 96 Pac. 679.)

A location on land covered at the time by another valid and subsisting location is void as to the overlapping portion, not only against the prior locator but against all the world. (*Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735; 1 Lindley on Mines, ed. 1897, secs. 337-363; 1 Morrison Min. Rep. 510;

Barringer & A., Mines & Min., p. 306; 1 Snyder on Mines, sec. 572; Martin's Min. Law & L. O. Proc., secs. 197-282; Costigan on Mining Law, 151; *Gwillim v. Donnellan*, 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. ed. 348; *Del Monte M. & M. Co. v. Last Chance M. & M. Co.*, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. ed. 72; *Clipper M. Co. v. Eli M. Co.*, 194 U. S. 226, 24 Sup. Ct. 632, 48 L. ed. 944; *Brown v. Gurney*, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. ed. 717; *Farrell v. Lockhart*, 210 U. S. 142, 28 Sup. Ct. 681, 52 L. ed. 994; *Book v. Justice Min. Co.*, 58 Fed. 128; *Zerres v. Vanina*, 134 Fed. 614; *Anderson v. Caughey*, 3 Cal. App. 22, 84 Pac. 223; *Nash v. McNamara*, 30 Neb. 114, 93 Pac. 405; *Moorhead v. Erie M. Co.*, 43 Colo. 408, 96 Pac. 253; *Lozar v. Neill*, 37 Mont. 287, 96 Pac. 343; *Quigley v. Gillett*, 101 Cal. 469, 35 Pac. 1040; *Montagne v. Labay*, 2 Alaska, 575.)

A party cannot make a valid relocation of lands legally possessed by another until the owner's rights have been abandoned, forfeited or otherwise ended. (*Lockhart v. Rollins*, 2 Ida. 540, 21 Pac. 413.) If a discovery is placed within an existing valid location, it is void. (1 Lindley on Mines, secs. 337-339; Martin's Min. Law, etc., sec. 282; Barringer & Adams M. & M., pp. 216-222; Morrison's Min. Rights, 36; Costigan on Mining Law, 152; 27 Cyc. 557; *Hoban v. Boyer*, 37 Colo. 185, 85 Pac. 837; *Lockhart v. Farrell*, 31 Utah, 155, 86 Pac. 1077; *Tuolumne C. M. Co. v. Maier*, 134 Cal. 585, 66 Pac. 863; *Russell v. Dufresne*, 1 Alaska, 486; *Atkins v. Hendree*, 1 Ida. 95.)

Abandonment by senior locator of area conflicting with junior locator will not inure to benefit of the latter. (1 Lindley on Mines, secs. 363-396; *Belk v. Meagher*, 104 U. S. 279-285, 26 L. ed. 735; *Oscamp v. Crystal R. M. Co.*, 58 Fed. 293, 7 C. C. A. 233; *Pralus v. Pacific & S. M. Co.*, 35 Cal. 30.)

After the senior's location has been forfeited the junior should file an amended certificate if he wishes to take in part of an abandoned claim. (*Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955; *Moorhead v. Erie M. & M. Co.*, 43 Colo. 408, 96 Pac. 253.)

A junior locator may, subsequent to the abandonment or forfeiture of the conflict area by the senior, amend his location and include the overlapping surface; but without some act on his part manifesting an intention to make a new appropriation or acquire a new right after the abandonment or forfeiture became effectual, this area would not by mere gravity become a part of the junior location. (1 Lindley on Mines, 1st ed., secs. 363-396; Morrison's Mining Rights, 102; *Johnson v. Young*, 18 Colo. 625, 34 Pac. 173; *Oscamp v. Crystal R. M. Co.*, 58 Fed. 293, 7 C. C. A. 233.)

If the *discovery* of a junior location is on a valid subsisting claim, or if, for any reason, the senior location was wholly void, an amended certificate would not be sufficient to cure the imperfection or to take in the area in conflict, but a *relocation* would have to be made. (*Sullivan v. Sharp*, 33 Colo. 346, 80 Pac. 1054; *Brown v. Gurney*, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. ed. 718.)

STEWART, J.—On January 10, 1908, Nancy M. Kettler filed the field-notes and a diagram of the survey of Malta No. 1 mining claim, and also an application for a patent for said mining claim, in the United States land office at Hailey, and caused the register of said office to give notice of said application for patent by publication as required by law, and within the sixty days period of publication the plaintiff filed in said land office a protest and adverse claim as provided by sec. 2326 of the Rev. Stat. of the United States, and within the time provided by said section brought this action for the purpose of determining the question of the right of possession to the land involved in the adverse claim. The cause was tried to the district court. Findings of fact and conclusions of law were made and a decree rendered in favor of the respondent, adjudging her to be the owner and in the possession and entitled to the possession of Malta No. 1 mining claim, and to each and every portion thereof, including the area alleged by the plaintiff (appellant here) to be in conflict with Independence No. 2 mining claim. A motion for a new trial was made and overruled and this appeal is from

the judgment and the order overruling the motion for a new trial.

To better understand the questions involved in this case, it may be stated that Emma No. 2 and Malta No. 1 mining claims are north and south locations, while Independence and Independence No. 2 mining claims are east and west locations; and that the conflict between Malta No. 1 and Independence No. 2 arises by reason of the fact that the southern end of Malta No. 1 laps over the western end of Independence No. 2.

The principal questions arising upon the record are as follows: The appellant contends that the assessment work for the year 1888 was not done upon Emma No. 2, and for that reason the ground covered by such location became forfeited and was open to relocation on January 3, 1889, the date Independence No. 2 was located; while respondent contends that the assessment work on Emma No. 2 was done for the year 1888 and that there was no forfeiture, and that the ground covered thereby was not open to relocation on January 3, 1889, and for that reason the Independence No. 2 location was illegal and void as to the area in conflict. It is also contended upon the part of the appellant that even though the assessment work on Emma No. 2 was done for the year 1888 and each subsequent year thereafter up to 1903, yet the failure to do such assessment work in the year 1903 inured to the benefit of the Independence No. 2 location and immediately worked a forfeiture of Emma No. 2 and made Independence No. 2 a valid location; while respondent contends that upon the failure to do the assessment work on Emma No. 2 for the year 1903, the ground covered thereby was forfeited and became part of the public domain and was open to relocation, and that the only way an interest could be acquired therein or the right to the possession of the same was by a relocation of such ground; and that respondent having relocated the ground as Malta No. 1 thereby acquired the right to the possession of such ground, and that the Independence No. 2 location did not become valid as to the area in conflict.

Respondent also contends that the appellant is estopped to claim title to the area in conflict, because of his acts and conduct in aiding and assisting in the location and staking of Malta No. 1 by respondent and her grantors; while appellant claims that estoppel is not plead and that the facts do not establish estoppel.

Taking up these contentions in connection with the assignments of error, we think it must be conceded that if the assessment work was not done on Emma No. 2 for the year 1888, that the ground embraced within the lines thereof became subject to relocation on January 1, 1889, and that the location of Independence No. 2 could have been legally made, overlapping and covering any part of the boundaries of Emma No. 2 as might be embraced within the description of the location of Independence No. 2. The court finds that the owners of Emma No. 2 performed more than $100 worth of labor and improvements upon said mining claim for the development of said claim, and the work so performed did actually and beneficially develop said mining claim.

Counsel for appellant assigns as error this finding, and contends that the evidence does not support such finding. Upon this issue the evidence of the appellant was merely of a negative character and to the effect that the appellant's witnesses did not see any work done upon this claim for the year 1888, although they were watching for the same and saw no evidence of any work having been done. The evidence on the part of the respondent was to the effect that in the month of December, 1888, $175 worth of work was done on this particular claim, describing such work. Others testified they saw a party there working. In a case of this kind where a forfeiture is claimed, the burden is upon the person claiming the forfeiture, and in this case with the appellant, and we think there is sufficient evidence to support the finding of the court to the effect that the assessment work was performed on Emma No. 2, for the year 1888. (*Hammer v. Garfield Min. etc. Co.*, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. ed. 964; *Quigley v. Gillett*, 101 Cal. 462, 35 Pac. 1040; *Beals v.*

*Cone,* 27 Colo. 473, 83 Am. St. 92, 62 Pac. 948; 2 Lindley on Mines, sec. 645.)

But it is further contended on the part of the appellant that the work done on Emma No. 2 for the year 1888 was intended to represent three different claims, and for that reason there was not sufficient work done on Emma No. 2 to represent that claim. The rule, however, as we understand it, is that where sufficient labor has been performed on a claim to represent a single claim, and it is contended by a junior locator that the work was done for the purpose of representing several claims, and for that reason was insufficient to represent the particular claim, that in determining the sufficiency of the labor the court will apply the labor done to the particular claim upon which the work was done. (*Fredericks v. Klauser,* 52 Or. 110, 96 Pac. 679; Costigan on Min. Law, pp. 379, 380.) But taking the evidence as a whole, we are satisfied that the finding of the court is supported by the evidence to the effect that the annual assessment work was done upon and for the benefit of Emma No. 2 for the year 1888.

If, then, the assessment work was done on Emma No. 2 for the year 1888, the question arises whether or not a valid location could be made overlapping and taking in any part of the ground covered by such location. Before considering this question, it is proper to consider the findings of the court which are challenged by the appellant, to the effect that the discovery of the Independence No. 2 was made upon ground included within Emma No. 2. This court has often announced that when there is a substantial conflict in the evidence, and sufficient evidence to support the lower court's finding, the same will not be disturbed. But in this case counsel for appellant contend that there is no substantial conflict in the evidence as to the location of the discovery of Independence No. 2; and that the evidence is not sufficient to show that such discovery was within the boundary lines of Emma No. 2. This contention of appellant is based upon the claim that the lines of Malta No. 1 and Emma No. 2 are not the same, and that the west line of Malta No. 1 is farther west and south than the old line of Emma No. 2.

It appears that prior to the location of Independence No. 2, the west side line of Emma No. 2 was flush with the east end line of Independence, and that when Independence No. 2 was located the east end line of Independence was readjusted and drawn to the west, thereby making the west end line of Independence No. 2 west of and not flush with the west side line of Emma No. 2. Appellant claims that the discovery of Independence No. 2 was upon this ground and not within the boundary line of Emma No. 2. It is clear from the evidence that the discovery of Independence No. 2 was made upon ground at one time covered by the Independence location or Emma No. 2. We think it was within the power of the owners of Independence to readjust the east end line and draw in such line and abandon the ground east of such readjusted line, and thereby render the same open to relocation under the mineral laws of the United States. (1 Lindley on Mines, secs. 396, 397, 398.)

· There is evidence to the effect that the lines of Malta No. 1 and Emma No. 2 are the same. If this be true, then the evidence supports the finding of the court, to the effect that the discovery of Independence No. 2 was upon ground covered by Emma No. 2 location. It appears that prior to the location of Emma No. 2 the west side line of Emma No. 2 and the east end line of Independence were flush, and that there was no unoccupied ground between Emma No. 2 and Independence; and that upon the location of Independence No. 2 the locators readjusted and drew in the east end line of Independence to the west, and that at no time was there any vacant unoccupied mineral ground between the west side line of Emma No. 2 and the east end line of Independence except in the ·interim between the readjustment of the east end line of Independence and the location of such ground as a part of Independence No. 2. But in the view we take of this case, it can make no difference whether the discovery of Independence No. 2 was upon ground covered ·by Emma No. 2 or upon ground west of the west side line of Emma No. 2 and upon ground at the. time of the discovery covered by Independence, for in either event it would not open to entry

as a part of Independence No. 2 ground covered and segregated by another valid location. In other words, a person cannot go upon unoccupied mineral ground and make a discovery and use such discovery for the purpose of overlapping and relocating ground covered by another valid location.

It could serve no good purpose in this case to set out in this opinion the evidence showing that the discovery of Independence No. 2 was upon Emma No. 2 and that the lines of Malta No. 1 and Emma No. 2 were identical, but we find sufficient evidence in the record to support these findings of the court.

The real and important question in this case, then, arises out of the following facts as found by the trial court: Emma No. 2 mining claim was located in the year 1881 as a north and south location, and the annual assessment work was performed up to the close of the year 1903. The Independence No. 2 mining claim was located as an east and west location on January 3, 1889, the discovery point of which was within the lines of Emma No. 2. The assessment work was not performed on Emma No. 2 for the year 1903. On January 1, 1904, the Malta No. 1 mining claim was located upon the lines of the Emma No. 2 and embraced the identical ground covered by the Emma No. 2. Under these facts, in whom does the title and right of possession to the ground in conflict between the Independence No. 2 and Malta No. 1 rest; with the appellant as the owner of Independence No. 2, or with the respondent as owner of Malta No. 1?

From this state of facts, we have a case where a mineral location is made upon land that is already covered by a valid mineral location; and after the junior location is made, the senior location becomes abandoned and forfeited, after which the ground embraced in the senior location is located by a third party; and the contest arises between the third locator and the junior location covering a part of the same area. In determining this question it is unnecessary to determine the validity of the respective locations, except in so far as the same affects the ground in conflict.

Until the case of *Lavagnino v. Uhlig,* 198 U. S. 443, 25 Sup. Ct. 716, 49 L. ed. 1119, it was generally considered by the courts in the mining states and text-writers that mineral ground covered by a valid location becomes segregated from the public domain and the property of the locator, and so long as the locator complies with the laws of the United States and the state and local regulations, such locator has the exclusive right and enjoyment to all the surface included within the lines of the location, against all the world; and that during such time such ground so segregated is not open to discovery and location by another, and that any relocation of such ground, during such time, is void. (*Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735; *Gwillim v. Donnellan,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. ed. 348; *St. Louis Min. Co. v. Montana Min. Co.,* 171 U. S. 650, 19 Sup. Ct. 61, 43 L. ed. 320; *Brown v. Killabrew,* 21 Nev. 438, 33 Pac. 865.)

Counsel for appellant, however, contend that this rule has been changed, and that in the case of *Lavagnino v. Uhlig, supra,* a different rule has been announced by the supreme court of the United States. The Lavagnino case was an adverse suit, as is the case at bar. The facts of that case, as we gather them from the opinion, are as follows: Application was made for patent for Uhlig No. 1 and Uhlig No. 2 mining claims, located on January 1, 1889. Adverse was filed by the owners of Yes You Do mining claim. It was contended that at the time the Uhlig claims were located there was a subsisting, valid location known as Levi P. claim which included within its area the land in dispute in the adverse; and that the Levi P. claim became forfeited by reason of the failure to perform the annual assessment work thereon for the year 1897, and acquired the status of unoccupied mineral lands on January 1, 1898, the date when the Yes You Do claim was located; and in considering the questions involved in that case, the court conceded that the Levi P. location, of which the Yes You Do purported to be a relocation, was prior in date to the location of the Uhlig Nos. 1 and 2, and that there were areas in conflict between them; and the question arose as to whether the locator of the Yes You Do mining claim

stood in such a relation as to enable the locator or his grantees to successfully adverse the application for patent made by the owners and possessors of the Uhlig locations, and the court states the question as follows:

"The question then is, where there was conflict of boundaries between a senior and junior location, and the senior location has been forfeited, has the person who made the relocation of such forfeited claim the right, in adverse proceedings, to assail the title of the junior locator in respect to the conflict area which had previously existed between that location and the abandoned or forfeited claim?

"To say that the relocator had such right involves, necessarily, deciding that, as to the area in conflict between the junior and the senior locations, the junior could acquire no present or eventual right whatever, and that, on the abandonment or forfeiture of the senior claim, the area in conflict became, without qualification, a part of the public domain. In other words, the proposition must come to this: that as the junior locator had acquired no right whatever, present or possible, by his prior location, as to the conflicting area, he would be obliged, in order to obtain a patent for such area, to initiate in respect thereto a new right, accompanied with a performance of those acts which the statute renders necessary to make a location of a mining claim.

"The deductions just stated are essential to sustain the right of the relocator of a forfeited mining claim to contest a location existing at the time of the relocation, on the ground that such existing location embraced an area which was included in the forfeited and alleged senior location, for the following reasons: If the land in dispute between the two locations, which antedated the relocation, did not, on the forfeiture of the senior of the two locations, become unqualifiedly a part of the public domain, then the right of the junior of the two would be operative upon the area in conflict on a forfeiture of the senior location. If it had that effect, it necessarily was prior and paramount to the right acquired by a relocation of the forfeited claim.

"But we do not think that the deductions which we have said are essential to sustain the right of the relocator to adverse, under the circumstances stated, can be sustained consistently with the legislation of Congress in relation to mining claims."

The court then quotes sec. 2326 of the U. S. Rev. Stat., and concludes that this section recognizes that a person, who has initiated a right to a mining claim, recorded his location notice and performed the other acts made necessary by law, and who makes application for a patent, will be entitled to a patent unless adverse rights are set up in the mode provided by the section; and that a senior locator possessed of a paramount right in the mineral land, for which a patent is sought, may abandon such right and cause it in effect to inure to the benefit of the applicant for a patent by failure to adverse, and that if before abandonment or forfeiture of the Levi P. claim, the owners of Uhlig locations had applied for patent, and the owners of Levi P. had not adversed the application, upon an establishment of a *prima facie* right in the owners of Uhlig claims, the presumption would have arisen that no conflict existed, and that as to third persons, the land was not unoccupied public land of the United States, but, as to such persons from the time of the location, by the applicant for the patent, was land embraced within such location and not subject to be acquired by another person; and that inasmuch as the issue had reference only to the conflicting area and the invalidity of the Uhlig locations, in respect to the premises in dispute, the land embraced within the location of the Uhlig claims was not unoccupied mineral lands of the United States at the time the Levi P. claim was relocated as the Yes You Do claim, and was not subject to relocation as the Yes You Do claim.

It seems to be held in the Lavagnino case that a forfeiture of a senior location, prior to the junior locator's application for a patent, inures to the benefit of the junior locator in so far as the area in conflict is concerned; and that one who relocates the area covered by the senior claim, after forfeiture, cannot successfully adverse the junior locator's appli-

cation for patent. This case seems to be based upon the provisions of sec. 2326 of the Rev. Stat. of the United States, and has reference to the right to adverse and involves a question of practice.

While it is true the court seems to announce, in deciding the case, a rule different from that announced in *Belk v. Meagher*, yet this conclusion arises in determining a question of practice; and we are led to the belief that while the two cases seem to be in conflict, yet it was not the intention of the court in the Lavagnino case to overrule the case of *Belk v. Meagher*. We are strengthened in this conclusion by the fact that in the Lavagnino case the court does not refer to *Belk v. Meagher* or discuss the rule announced in that case, or indicate in any way that it was the express intention to overrule or modify *Belk v. Meagher*. We are convinced that the case of *Belk v. Meagher* has been the law so long and has been recognized by the courts of all the mining states as well as the supreme court of the United States, as announcing the true rule, that the same court would not have announced a rule in conflict with that case without directing its attention to that case or in some way indicating its express intention to announce a different rule. We must confess that it is somewhat difficult to reconcile the rule announced in the Lavagnino case with that announced in *Belk v. Meagher*, but in the more recent case of *Brown v. Gurney*, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. ed. 717, an adverse suit in which the Lavagnino case was cited by counsel as authority, the supreme court of the United States, speaking through Chief Justice Fuller, says:

"Of course it is essential that at the date of a location the ground located on should be part of the public domain, and in the present case the specific question affirmatively raised was whether the ground in controversy was a part of the public domain at the time of the respective contested locations.

"It seems to us that when the Scorpion locator attempted to make that location he conceded the validity of the Kohnyo location and the segregation by that location from the public domain of the southerly portion of that claim."

And the court further remarks:

"We again state the dates of the respective locations. The Scorpion was located May 13, 1898. The Hobson's Choice was located June 23, 1898. The location of the P. G. was July 16. Thus it is seen that the Scorpion was attempted to be located at a time when the premises were not subject to location; that the Hobson's Choice was located when the premises had reverted to the public domain; and that the location of the P. G. was after that date."

Later the case of *Farrell v. Lockhart, supra,* reached the supreme court of the United States, 210 U. S. 142, 28 Sup. Ct. 681, 52 L. ed. 994, and the Lavagnino case was discussed; and while the court in the opinion states, "We do not pause to particularly re-examine the reasoning expressed in the opinion in *Lavagnino v. Uhlig* as an original proposition," yet, after referring to the case of *Belk v. Meagher* and *Brown v. Gurney, supra,* the court said:

"We think the opinion in the Lavagnino case should be qualified so as not to exclude the right of a subsequent locator on an adverse claim to test the lawfulness of a prior location of the same mining ground upon the contention that, at the time such prior location was made, the ground embraced therein was covered by a valid and subsisting mining claim. It is to be observed that this qualification but permits a third locator to offer proof tending to establish the existence of a valid and subsisting location anterior to that of the location which is being adversed. It does not, therefore, include the conception that the mere fact that a senior location had been made, and that the statutory period for performing the annual labor had not expired when the second location was made, would conclusively establish that the location was a valid and subsisting location, preventing the initiation of rights in the ground by another claimant, if, at the time of such second location, there had been an actual abandonment of the original senior location. We say this, because—taking into view *Belk v. Meagher, Lavagnino v. Uhlig,* and *Brown v. Gurney*—we are of the opinion, and so hold, that ground embraced in a mining location may become a part of the

public domain so as to be subject to another location before
the expiration of the statutory period for performing annual
labor, if, at the time when the second location was made, there
had been an actual abandonment of the claim by the first
locator.''

As we understand it, the court holds that an adverse upon
application for patent by a junior locator, as against the
senior locator, or a third location as against the junior loca-
tion, may show that the ground covered by the senior location
had become a part of the public domain so as to be subject
to relocation even before the expiration of the statutory period
for performing the annual labor, by showing that there had
been an actual abandonment of the claim by the first locator.
This rule, however, does not change the principle announced
in *Belk v. Meagher, supra,* to the effect that until a location
is terminated by *abandonment* or *forfeiture,* no right or
claim to the property can be acquired by an adverse entry
thereon with a view to the relocation of the same. If it can
be shown that at the time a junior location is made the senior
location has actually been abandoned, then, of course, the
area would be a part of the public domain at the date of the
junior location and be open to entry. If, on the other hand,
the area covered by a senior location has not been abandoned
or forfeited at the time the junior location is made, then of
course, at the time of the junior location it would not be a
part of the public domain and therefore not subject to relo-
cation, and such relocation as to such area would be void.
In the case at bar, so long as the Emma No. 2 claim was not
forfeited or abandoned, the conflict area between it and the
Independence No. 2 was not subject to relocation by anyone,
but remained segregated and a part of Emma No. 2. If,
however, such area in conflict became abandoned or forfeited
under the Emma No. 2 location, it would not become a part
of Independence No. 2, although within the surface boundaries
thereof, but would revert to the public domain and would be
subject to relocation by anyone who desired to relocate the
same. The inchoate title and right of possession acquired
by the senior locator would revert to the United States, the

owner of the fee, by operation of law; and another claimant must acquire his rights from the owner of the fee.

The owners of Independence No. 2 might have made such territory a part of Independence No. 2 by filing an additional or amended location certificate as prescribed by law, or making an entirely new location covering such territory. Such steps, however, not having been taken and nothing having been done by the Independence No. 2 locators to connect such location with the area in conflict after its forfeiture, and after it had become subject to relocation, and the locators of Malta No. 1 having located a claim embracing the area in conflict, such area thereby became segregated as a part of the Malta No. 1 location, and the locators of Independence No. 2 acquired no right to such area under the Independence No. 2 location.

This is the principle, as we understand it, announced in *Belk v. Meagher*, and we are inclined to believe it is the rule reaffirmed in *Farrell v. Lockhart* and *Brown v. Gurney, supra*. If the contention made by appellant should be sustained, in our judgment it would subject to relocation every valid mining claim and make the relocation of mining claims purely a speculative business and lead to fraud and misrepresentation. If ground covered by a valid, subsisting mining claim is subject to relocation, and in case the senior locator thereafter fails to comply with the law and there is an abandonment or forfeiture, such forfeiture or abandonment inures to the benefit of the junior locator and thereby renders the junior location valid as to the area in conflict, then it would be a profitable business for a person to go into the profession of relocating mining claims and not wait until there was in fact a forfeiture or abandonment. We, however, are unable to make this deduction either from the statute or the decisions of the supreme court of the United States, and are of the opinion that where a valid mining location has been made, by such location the ground is segregated and withdrawn from entry and location so long as the locator complies with the laws of the United States. If, however, at any particular time there should be a forfeiture or abandonment of the

ground covered by such location, then the same is open to relocation as though it were virgin territory; and if any part of the area embraced within senior and junior locations is thereafter covered by a third location, the third locator may show that at the time the junior location was made the ground was not subject to relocation and was a part of and within the boundaries of a valid, subsisting location; and as against such third location it must appear that the ground in conflict was open to the relocation at the time such relocation was made, and that upon application for a patent by the junior locator, where the senior locator does not adverse, it will be presumed that the ground was open to relocation at the time the relocation was made. But where an adverse is filed by a third locator claiming all or any part of the ground in conflict, such third locator may show that at the time the relocation was made the ground in conflict was not open to location by reason of the fact that the senior location was a valid and subsisting location, and that it was in respect to the right to adverse and the showing that might be and was required to be made with which the court was dealing and with reference to which the court intended to decide in the Lavagnino case. We believe this position is clearly supported by the leading authorities dealing with the question. (*Rose v. Richmond Min. Co.*, 17 Nev. 25, 27 Pac. 1105; *Hoban v. Boyer*, 37 Colo. 185, 85 Pac. 837; *Lockhart v. Farrell*, 31 Utah, 155, 86 Pac. 1077; *Nash v. McNamara*, 30 Nev. 114, 93 Pac. 405; *Moorhead v. Erie Min. & Mill Co.*, 43 Colo. 408, 96 Pac. 253; *Montagne v. Labay*, 2 Alaska, 575; *Souter v. Maguire*, 78 Cal. 543, 21 Pac. 183; *Book v. Justice Min. Co.*, 58 Fed. 106; *McCulloch v. Murphy*, 125 Fed. 147; *Zerres v. Vanina*, 134 Fed. 610; *Wilson v. Freeman*, 68 L. R. A. 833, note.)

The record discloses a number of other assignments of error, all of which we have carefully examined. Many of them we find are not well founded and a consideration of the same would not lead to a reversal of this case. The others are covered by the discussion in this opinion.

Appellant urges very strongly. that the trial court erred
in its findings with reference to the facts and the deduction
made therefrom by counsel for respondent, that the appel-
lant is estopped from claiming any interest in the ground in
conflict. If we are correct in our conclusion that the appel-
lant acquired no interest or title or right of possession to the
ground in conflict, by reason of the Independence No. 2 loca-
tion, and that the respondent acquired title and right of
possession by virtue of Malta No. 1, then the question of
estoppel becomes of no consequence in this case. It is a
matter of entire indifference and wholly immaterial whether
the appellant is estopped to deny the respondent's title to
the ground in conflict by reason of his acts and conduct in
pointing out to the respondent the lines of the Emma claim
and aiding, without objection, in the location of Malta No. 1
and without making claim to any part of the ground covered
by such location. For this reason it is entirely unnecessary
to discuss or consider the question of estoppel, as whatever
view this court might take of this question could make no
difference as to the result finally to be reached.

The judgment in this case is *affirmed*. Costs awarded to
the *respondent*.

Ailshie, J., concurs.

Sullivan, C. J., did not sit at the hearing or participate in
this opinion.

ON PETITION FOR REHEARING.

(January 4, 1910.)

AILSHIE, J.—A petition has been filed in this case by the
respondents, asking for a rehearing on the single question of
estoppel. The contention made for rehearing is that the
court decided the case on a purely federal question, and that
the decision of this court is therefore reviewable by the su-
preme court of the United States; that the question of estop-
pel is not a federal question, and that if the contention made
on this point should be decided in favor of respondents, such

decision would render the judgment of this court final and not reviewable by the supreme court of the United States. This latter proposition seems to be correct and supported by the decisions from the supreme court of the United States, and was given due consideration by us before announcing our decision in the case. (See *Cal. Powder Wks. v. Davis*, 151 U. S. 389, 14 Sup. Ct. 350, 38 L. ed. 206; *Rutland R. Co. v. Cent. Vt. R. Co.*, 159 U. S. 630, 16 Sup. Ct. 113, 40 L. ed. 284; *Capt. Nat. Bank v. First Nat. Bank*, 172 U. S. 425, 19 Sup. Ct. 202, 43 L. ed. 502.) It has been the uniform practice of this court to only decide such questions as were necessary to a final judgment in any given case. The question we have decided in this case finally disposes of the case and makes the consideration of other questions unnecessary. If we had thought that the supreme court of the United States was likely to disagree with us or reverse our judgment, we would not have held as we did, but, on the contrary, would have followed what we conceived to be the rule of law recognized and adopted by that court. If it should so happen that the decision of this court is reversed, it will then be time enough to consider any further questions raised. The petition is denied.

The appellant has also filed a petition "for a rehearing and a reconsideration of the case, and particularly with reference to the question as to whether there is sufficient evidence to justify the trial court's finding as to the Malta No. 1 and the Emma No. 2 covering the same ground." We did not review the evidence on this question in the original opinion. In considering this question the court did say: "It could serve no good purpose in this case to set out in this opinion the evidence showing that the discovery of Independence No. 2 was upon Emma No. 2, and that the lines of the Malta No. 1 and Emma No. 2 were identical, but we find sufficient evidence in the record to support the findings of the court." It is true that the evidence is conflicting on this issue, and is indeed unsatisfactory, and if it were an original proposition before this court we might find differently from the finding of the trial court, but under the uniform rule of this court,

as well as the command of the statute (sec. 4824, R. C.), we are impelled to sustain the finding of the trial court. There is a substantial conflict in the evidence, and the trial court felt justified in believing the evidence to the effect that the Malta No. 1 and the Emma No. 2 covered the same ground and were identical. He evidently did not believe the evidence to the contrary. The petition will therefore be denied.

Stewart, J., concurs.